This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO. 30,054**

**JERED LEATHERMAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Steven L. Bell, District Judge**

Gary K. King, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant Jered Leatherman appeals his convictions for receiving stolen property in violation of NMSA 1978, Section 30-16-11(I) (2006), and resisting, evading, or obstructing an officer in violation of NMSA 1978, Section 30-22-1(B) (1981). Prior to trial, Defendant moved to suppress all of the evidence against him on the ground that it was obtained in violation of his right to be free from unreasonable seizures as protected by the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Specifically, Defendant contends that the evidence against him should have been suppressed because law enforcement seized him without reasonable suspicion. We agree and reverse.

Because the parties are familiar with the facts and proceedings of this case and because this is a memorandum opinion, we provide only a brief discussion of the background. We include additional information as necessary in connection with the issues raised.

**BACKGROUND**

The following undisputed facts come from the testimony of Sergeant Michael Taylor of the Roswell Police Department. Sergeant Taylor was on patrol around 4:15 a.m. on July 13, 2008, when he observed Defendant riding his bicycle down a sparsely lit street. Defendant was wearing a backpack. Sergeant Taylor decided that he wanted to make contact with Defendant to "make sure he was okay, make sure where he

might have been headed, where he might have come from." In order to make contact with Defendant, Sergeant Taylor pulled onto a parallel street and kept an eye on Defendant. He observed there was a well lit intersection on the street on which Defendant was riding and that it dead ended, forcing Defendant to eventually turn left or right. Sergeant Taylor drove into that intersection, pulled underneath the street light, and got out of the car as Defendant continued toward him. When Defendant was within the lit area, Sergeant Taylor said, "hey, how are you doing?" Defendant looked at the officer and slowly continued on.

As Defendant passed within five feet of him, Sergeant Taylor noticed Defendant had "an unknown black item" in his hand, that he made a quick motion to put it up to his side, and that he hunched over the bicycle slightly. Sergeant Taylor testified that Defendant's movements gave him the impression that Defendant was attempting to hide something from his view, and this gave him "concern." At that time, Sergeant Taylor advised Defendant, "Roswell Police, come here and talk to me." Defendant looked back and started pedaling rapidly. Sergeant Taylor immediately got back into his car, put on his high beams, and drove behind Defendant. Defendant rode through a stop sign at the intersection. Sergeant Taylor drove his car beside Defendant and twice announced "Roswell Police, you need to stop." Sergeant Taylor then drove past Defendant and turned his car in front of Defendant. Defendant

3

stopped, nearly losing control of the bike. The officer heard the sound of a metal object hitting the ground, and when he got out of his car, he observed a pistol on the ground.

Defendant was arrested and charged with receiving stolen property (firearm) and resisting, evading, or obstructing an officer. Prior to trial, Defendant moved to suppress all of the evidence on the ground that the officer lacked reasonable suspicion to stop him. The district court denied Defendant's motion. A jury convicted Defendant on both counts, and this appeal timely followed.

**DISCUSSION**

Defendant alleges multiple errors in the proceedings before the district court. Defendant first argues that the evidence against him should have been suppressed because it was obtained as the result of an unconstitutional seizure. Because we agree that Defendant was seized in violation of his constitutional rights and reverse on this basis, we do not address Defendant's other arguments.

**Standard of Review**

"The review of a denial of a motion to suppress presents a mixed question of fact and law." *State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307. We review a district court's suppression ruling to determine "whether the law was correctly applied to the facts, viewing the facts in the manner most favorable to the

prevailing party." *State v. Garcia*, 2009-NMSC-046, ¶ 9, 147 N.M. 134, 217 P.3d 1032. Where, as here, there are no findings of fact from the district court, "we will indulge in all reasonable presumptions in support of the district court's ruling." *State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We review the application of the law to the facts de novo. *Garcia*, 2009-NMSC-046, ¶ 9. "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted).

**Preservation and Interstitial Analysis**

"Both the United State[s] Constitution and the New Mexico Constitution protect a citizen against unreasonable searches and seizures." *Id.* ¶ 7 (internal quotation marks and citation omitted). "Because both the United States and the New Mexico Constitutions provide overlapping protections against unreasonable searches and seizures, we apply our interstitial approach" unless a defendant fails to preserve his or her state constitutional claim. *State v. Ketelson*, 2011-NMSC-023, ¶ 10, 150 N.M. 137, 257 P.3d 957. As the State correctly acknowledges, in order for a defendant to preserve a claim under the New Mexico Constitution where, as here, the constitutional provision has been interpreted more broadly than its federal counterpart, the defendant

need only raise the applicable provision and develop a factual record to enable the district court to make a ruling. *Id.* ¶ 11; *State v. Leyva*, 2011-NMSC-009, ¶ 49, 149 N.M. 435, 250 P.3d 861. This satisfies Rule 12-216 NMRA's requirement that the litigant "fairly invoke" a ruling by the district court. *Leyva*, 2011-NMSC-009, ¶ 40. Defendant did that here, raising both the federal and state constitutional provisions in his motion to suppress and developing a factual record at the suppression hearing. Nevertheless, the State argues that Defendant did not preserve his state constitutional claim because he did not object to the district court's ruling denying his motion or request that the district court enter an order with specific factual findings. Under the standard for preservation established by our Supreme Court, Defendant was not required to take either action suggested by the State. *See id.* Thus, Defendant's state constitutional claim was preserved, and we apply our interstitial analysis.

Under our interstitial approach, we first address whether Defendant was protected under the Fourth Amendment of the federal constitution. *Ketelson*, 2011-NMSC-023, ¶ 10. If the Fourth Amendment provides the protection that Defendant seeks, our analysis ends. *Id.* If not, we then determine whether the broader protections afforded by Article II, Section 10 of the New Mexico Constitution apply in this case. *Id.*; *Garcia*, 2009-NMSC-046, ¶¶ 13, 25.

6

**The Fourth Amendment**

There is no dispute that Sergeant Taylor seized Defendant; however, the parties dispute at what point Defendant was seized and whether the officer had reasonable suspicion to support that seizure. Defendant argues that he was seized when Sergeant Taylor drove his police car in front of him causing him to stop. The State, on the other hand, contends that Defendant was not seized until after Sergeant Taylor saw the pistol lying in the street and "took him into custody by physically detaining and handcuffing him." Therefore, our first task in determining whether Sergeant Taylor seized Defendant in violation of the Fourth Amendment is to resolve at what point the seizure occurred. *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30. For the following reasons, we conclude that Defendant was seized for the purposes of the Fourth Amendment when Sergeant Taylor pulled his car in front of Defendant.

A seizure occurs "'whenever a police officer accosts an individual and restrains his freedom to walk away.'" *Jason L.*, 2000-NMSC-018, ¶ 15 (quoting *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). A police officer's restraint of a person's freedom so as to constitute a seizure "can be the result of either physical force or a showing of authority." *Id.* For the purposes of the Fourth Amendment, courts use different standards for determining if a person was seized depending on whether the officer

7

used a show of authority or physical force. When law enforcement attempts to stop an individual through a show of authority, the individual is only seized and thus protected by the Fourth Amendment when he submits to the officer's show of authority. *Garcia*, 2009-NMSC-046, ¶ 15; *Harbison*, 2007-NMSC-016, ¶ 2. When law enforcement applies physical force to a person, the person is seized regardless of whether the person's "movement was restrained, affected, or deterred." *Garcia*, 2009-NMSC-046, ¶ 20. "Unlike assertion-of-authority cases, there is no need for a defendant to demonstrate submission in cases of physical force." *Id.*

Under either standard, Defendant was seized at the time Sergeant Taylor turned his car in front of him. First, the record reflects that Defendant stopped his bike when Sergeant Taylor pulled his car in front of him thus demonstrating that Defendant submitted to Sergeant Taylor's show of authority as Defendant did not continue to move away from the officer or attempt to flee. *See Harbison*, 2007-NMSC-016, ¶¶ 5, 14 (holding that a defendant who ran from the scene of a drug buy upon the arrival of police and was commanded by the police to stop was not seized until he actually stopped running). Second, we have previously held that "[b]locking a subject's vehicle is a form of physical restraint." *State v. Lopez*, 109 N.M. 169, 172, 783 P.2d 479, 482 (Ct. App. 1989), *modified on other grounds by Jason L.*, 2000-NMSC-018.

Accordingly, Sergeant Taylor's act of pulling his vehicle in front of Defendant's bicycle and blocking Defendant's way constituted the use of physical force.

Having determined the point at which Defendant was seized for the purposes of the Fourth Amendment, we now determine whether Sergeant Taylor had reasonable suspicion to stop Defendant for an investigative detention. *See State v. Maez*, 2009-NMCA-108, ¶ 16, 147 N.M. 91, 217 P.3d 104 ("Reasonable suspicion is analyzed at the point when an actual seizure occurs."). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted). "The test is an objective one. The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *Id.* (internal quotation marks and citation omitted). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* (internal quotation marks and citation omitted).

Defendant argues that, at the point that Sergeant Taylor stopped him by driving his police car in front of him, the officer lacked reasonable suspicion to detain

Defendant. Sergeant Taylor testified that prior to stopping Defendant, he observed Defendant ride his bicycle through an intersection without stopping at the stop sign. As Sergeant Taylor testified, bicycles are required to stop at stop signs, and failure to do so is a traffic infraction. *See* NMSA 1978, § 66-3-702 (1978) ("Traffic laws apply to persons riding bicycles."); NMSA 1978, § 66-7-345(C) (2003) (making failure to obey stop signs a traffic violation). This fact alone supports an inference that a law had been violated and provides an objectively reasonable basis for the officer to stop Defendant. Because Defendant's traffic infraction occurred before he was seized by Sergeant Taylor, we conclude that the seizure at that point was not illegal, and there was no Fourth Amendment violation. However, under our interstitial analysis, "we now proceed to determine whether the evidence against Defendant was unlawfully acquired as the fruit of an unreasonable seizure under Article II, Section 10." *Garcia*, 2009-NMSC-046, ¶ 25.

**Article II, Section 10 of the New Mexico Constitution**

Defendant argues that he is entitled to relief under Article II, Section 10 of the New Mexico Constitution, which provides greater protection in recognizing when a seizure occurs. Under this broader standard, Defendant asserts that he was seized at the time Sergeant Taylor said, "Roswell Police, come here and talk to me" because

10

any reasonable person would understand that this was a command that needed to be complied with. We agree.

Under Article II, Section 10 an individual is seized by law enforcement when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" rather than when he submits to the officer's physical force or show of authority. *Garcia*, 2009-NMSC-046, ¶ 37 (internal quotation marks and citation omitted). "The reasonable person would not feel free to leave when his or her freedom of movement is restrained or when the facts show accosting and restraint[.]" *Id.* (citation omitted). "While police are free to engage people consensually to gather information, when they convey a message that compliance with their requests is required, the reasonable person would not feel free to leave and a seizure has occurred." *Id.* ¶ 39 (alteration, internal quotation marks, and citation omitted). If an officer has reasonable suspicion to believe that an individual is involved in criminal activity, he may briefly detain that person to verify or quell that suspicion. *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994). However, such a stop must be supported by reasonable suspicion at its inception. *Jason L.*, 2000-NMSC-018, ¶ 20.

In support of his argument, Defendant cites to *Garcia*. In *Garcia*, our Supreme Court concluded that the defendant, who an officer saw walking down the street, was

seized when the officer stopped his marked vehicle in an intersection within close proximity to the defendant, shone his spotlight on him, and then "told, ordered, or yelled at" the defendant to stop. 2009-NMSC-046, ¶ 41 (internal quotation marks omitted). The defendant in *Garcia* continued on his way past the patrol car. *Id.* ¶¶ 3, 41. Nonetheless, the Court stated that the officer's actions "demonstrated accosting and restraint" within the meaning of Article II, Section 10 and that "[a] reasonable person would not have felt free to terminate the encounter and walk away." *Id.* ¶ 41.

The facts here bear similarities to those in *Garcia*. Sergeant Taylor pulled into an intersection directly in front of Defendant. Although he was in an unmarked patrol car, he exited the vehicle and stood in the road in his full police uniform making it obvious that he was law enforcement. When Defendant came within five feet of the officer, Sergeant Taylor addressed him, first merely saying, "hey, how are you," but before Defendant had pedaled past the car and out of the lit area, Sergeant Taylor advised, "Roswell Police, come here and talk to me." Unlike in *Garcia*, the record does not reflect what tone the officer used. *See id.* Nevertheless, "come here and talk to me" is a command, and one given by a fully uniformed officer who identified himself as police seconds after attempting to make an initial contact with Defendant.

The State asserts that this single statement made in an unknown tone of voice is not conduct amounting to a seizure. While this may be true, we determine whether

a person has been seized by examining the totality of the circumstances and objectively determining whether a reasonable person would have felt free to leave. Here, we conclude that a reasonable person would not feel that he was free to leave given the officer's position in the intersection, that the officer pulled up just as Defendant rode toward him, that he exited the vehicle and stood in the road waiting for Defendant to approach, and then commanded Defendant to come talk to him after Defendant had already passed by and declined to speak with the officer. Our courts have held that "the use of language or tone of voice indicating that compliance with the officer's request might be compelled" is a circumstance indicating that a seizure has occurred. *Id.* ¶ 39 (internal quotation marks and citation omitted). Given these circumstances and the officer's use of language that indicated that compliance with his request might be compelled, we conclude that Defendant was seized under Article II, Section 10 at the point when Sergeant Taylor commanded, "Roswell Police, come here and talk to me." *See Garcia*, 2009-NMSC-046, ¶¶ 39, 41; *see also State v. Soto*, 2008-NMCA-032, ¶ 15, 143 N.M. 631, 179 P.3d 1239 (holding that officers pulling up next to a bicyclist at 2:30 a.m. and questioning the defendant constituted a show of authority).

We next consider whether, at the point Sergeant Taylor seized Defendant, he had reasonable suspicion to do so. *See Garcia*, 2009-NMSC-046, ¶ 42. For an officer

13

to conduct an investigatory detention, he must have "a reasonable and articulable suspicion" that the person being detained "is breaking, or has broken, the law." *Id.* ¶ 43 (internal quotation marks and citation omitted). "These facts must be specific, articulable, and particular to the individual who is detained." *State v. Williams*, 2006-NMCA-062, ¶ 23, 139 N.M. 578, 136 P.3d 579. "Unsupported intuition and inarticulate hunches are not sufficient" to justify a stop. *Garcia*, 2009-NMSC-046, ¶ 43 (internal quotation marks and citation omitted).

"In examining the reasonableness of an officer's suspicion, we objectively consider the totality of the circumstances, including all the information the officer possessed at the time." *Williams*, 2006-NMCA-062, ¶ 23. At the time Sergeant Taylor seized Defendant, the following facts were known to him. Defendant was riding a bicycle at about 4:15 a.m. He was wearing a backpack, was riding on a sparsely lit street, and was riding close to the sidewalk where it was darker. The area in which he was riding was not a high crime area. Roswell generally had been experiencing a high rate of burglaries, but Sergeant Taylor was on routine patrol and was not responding to any call in the area. Defendant did not respond to Sergeant Taylor when the officer asked him how he was doing. Sergeant Taylor saw an "unknown black item" in Defendant's hand and noticed that Defendant moved that hand quickly towards his pocket and "hunched . . . slightly as if he was attempting to

14

hide whatever it was." Additionally, Sergeant Taylor testified that in his experience, people who commit burglaries often wear backpacks and ride bicycles.

The State contends that these facts are sufficient to show that Sergeant Taylor had individualized reasonable suspicion to conduct an investigative detention. Even viewing these facts in the light most favorable to the district court's ruling, we cannot agree. Although reasonable suspicion can arise from wholly lawful conduct, it cannot "be based merely on an officer's intuition or hunches." *Maez*, 2009-NMCA-108, ¶ 18. At best, the facts here illuminate nothing more than a hunch. Carrying an unknown black object in one hand and hunching over while riding a bicycle are not grounds for reasonable suspicion even when considered within the context of the early hour, that Defendant carried a backpack, rode on a dark street, and that generally Roswell as a whole was experiencing a high level of burglaries. *See State v. Gutierrez*, 2008-NMCA-015, ¶¶ 15-17, 143 N.M. 522, 177 P.3d 1096 (finding no reasonable suspicion where the defendant was walking down a residential street holding a pair of pants, looked at passing officers in surprise, moved on to the sidewalk, lowered his arm so that it was next to his hip, and took a step backwards as the officers approached); *City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 17, 141 N.M. 261, 154 P.3d 76 (finding no reasonable suspicion where a neighbor reported that an unknown vehicle had been parked for a half hour at 11:30 at night in a

neighborhood where there had been recent burglaries).  Although Sergeant Taylor testified that Defendant's motions while riding his bicycle of appearing to try to hide an unknown black object caused him "concern" so that he decided he was going to stop Defendant, the officer did not articulate what he meant by "concern" or what basis this gave him for believing a crime had occurred or was occurring.  "In the absence of specific and particularized incriminating information about the criminal activity that [the] defendant is or is about to engage in, generalized suspicions [are] insufficient to create reasonable suspicion for an investigatory detention."  *State v. Neal*, 2007-NMSC-043, ¶ 25, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted).

The State contends that the fact that Defendant did not acknowledge the officer after Sergeant Taylor asked him how he was supports reasonable suspicion here.  We disagree.  The right to be free from unreasonable searches and seizures includes the "right to be let alone," and Defendant was free to disregard Sergeant Taylor's attempt at a consensual encounter and continue on his way.  *Garcia*, 2009-NMSC-046, ¶¶ 34, 37 (internal quotation marks and citation omitted).  To use it against a person when he exercises his right to disregard an officer's attempt to engage him in a consensual encounter would undermine the purpose of the right.

The State also contends that Defendant's failure to stop and subsequent traffic violation constituted intervening circumstances in Sergeant Taylor's seizure of Defendant and thus, even if the seizure was illegal, the evidence later obtained should not be excluded. The State asserts that Defendant's actions constitute "a break in the chain between the unlawful seizure and the subsequent discovery of evidence." We are not persuaded.

"The fruit of the poisonous tree doctrine bars the admission of evidence obtained after an illegal . . . detention except in *very limited circumstances*, such as where there is a break in the causal chain leading from [the d]efendant's unlawful [detention] to the search of his person." *State v. Hawkins*, 1999-NMCA-126, ¶ 16, 128 N.M. 245, 991 P.2d 989 (emphasis added) (alteration, internal quotation marks, and citation omitted). This is not such a case. The record here reflects that the evidence discovered and developed against Defendant on the charges of evading an officer and receiving stolen property is directly linked to Sergeant Taylor's initial unlawful seizure of Defendant and the officer's conduct that followed.

In *Soto*, this Court discussed the factors used for "assessing attenuation between illegal police conduct and the discovery of evidence." 2008-NMCA-032, ¶ 25. "The three factors are: (1) the amount of time that elapsed between the illegality and the acquisition of evidence; (2) any intervening circumstances; and (3) the purpose and

17

the flagrancy of the police misconduct." *Id.* (internal quotation marks and citation omitted). Although the record does not indicate exactly how much time elapsed between the point at which Sergeant Taylor initially seized Defendant and the point at which he pulled his car in front of Defendant, it appears to have been within the space of a few minutes during which time the officer was following Defendant with his high beams on. Thus, the interval of time was minimal if not non-existent. That Defendant continued to ride away, especially when he had no obligation to stop, is simply not an intervening circumstance that would break the causal chain. The officer's purpose in attempting to stop Defendant appears only to have been to explore his unspecified concern, and his subsequent conduct only escalated the intrusion. *See Garcia*, 2009-NMSC-046, ¶ 41. Considering the short amount of time, the lack of any significant intervening event, the officer's vague purpose in conducting the stop, and his subsequent conduct, we conclude that there was no break in the causal chain between the illegal seizure and the development and discovery of evidence against Defendant. *See Soto*, 2008-NMCA-032, ¶ 27 (holding that the discovery of a warrant for the defendant did not justify an illegal stop of a bicyclist for the purpose of obtaining his information and running a warrants check); *Hawkins*, 1999-NMCA-126, ¶ 19 (holding that evidence seized as the result of a strip search after an illegal arrest

18

should be suppressed because there was no break in the causal chain from the arrest to the strip search).

We do not suggest that an officer cannot follow individuals he or she suspects of being involved in a crime, or that riding a bike through a stop sign is an excusable offense; however, Sergeant Taylor's actions demonstrate that, under our state constitution, Defendant was not free to leave from the time Sergeant Taylor issued the command to come and talk to him to the time he was ultimately arrested. In *Garcia*, our Supreme Court stated that "allowing the police to assert their authority by pursuing suspects or brandishing weapons without reasonable suspicion, as long as the suspects do not submit, is anathema to our constitutional freedoms." 2009-NMSC-046, ¶ 34 (internal quotation marks and citation omitted). Excluding the evidence here, where Defendant did not submit to Sergeant Taylor's unreasonable seizure, "bolsters the purpose of the exclusionary rule, which is to deter unlawful police conduct." *Soto*, 2008-NMCA-032, ¶ 25.

**CONCLUSION**

We reverse the district court's denial of Defendant's motion to suppress. Consequently, we vacate Defendant's convictions and remand to the district court for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**MICHAEL E. VIGIL, Judge**