This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40803**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DALE A. LITTLE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Daniel A. Bryant, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Alethia V.P. Allen, Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Melanie C. McNett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** Defendant Dale A. Little appeals his conviction for possession of a controlled substance. Defendant challenges the district court's denial of his motion to suppress evidence seized during an encounter with a sheriff's deputy. Because we agree with the district court that the encounter was consensual, we affirm.

### BACKGROUND

**{2}** Both the responding officer—an Otero County Sheriff's Office deputy (the Deputy)—and Defendant testified at the hearing on Defendant's motion to suppress. In evaluating the hearing testimony, the district court ruled, "If there was any conflict in testimony between [D]efendant and the [D]eputy, the [c]ourt finds the [D]eputy to be credible in his description of what happened." We summarize the evidence elicited at the suppression hearing in view of this determination. *See State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19 ("As a reviewing court we do not sit as a trier of fact because the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses." (alteration, internal quotation marks, and citation omitted)); *State v. Simpson*, 2019-NMCA-029, ¶ 5, 446 P.3d 1160 ("In reviewing a district court's ruling denying a motion to suppress, this Court draws all reasonable inferences in favor of the ruling and defers to the district court's findings of fact as long as they are supported by substantial evidence.").

**{3}** On a February evening, at approximately 7:00 p.m., the Deputy responded to a call reporting a man in potential distress on a rural stretch of road near Tularosa, New Mexico. It was dark outside and there were no streetlights in the area. The Deputy—who was in a marked police car and was in full uniform, displaying his badge of office—encountered Defendant on foot, traveling in the opposite direction. The Deputy parked his vehicle before reaching Defendant, illuminating Defendant with the vehicle's headlights. Although there were flashing lights visible from the sides and back of the vehicle, the Deputy did not engage his overhead emergency lights. The Deputy approached Defendant and informed him that he was not being stopped, detained, or arrested. The Deputy testified that he inquired as to Defendant's well-being, although he could not recall the exact moment the inquiry was made or the exact words he used.

**{4}** Approximately ninety seconds into the interaction, Defendant requested a ride home from the Deputy. Pursuant to Otero County Sheriff's Office policy, prior to giving someone a ride, the Deputy was required to verify their identity and do a search for weapons. The Deputy testified that, had Defendant refused the search, he would have been allowed to walk away, although the Deputy did not indicate whether he told Defendant this. Defendant verbally consented to the search and, upon patting down Defendant, the Deputy uncovered a methamphetamine pipe. The Deputy asked Defendant if he possessed any other illegal items, and Defendant admitted to having methamphetamine in his boot, which he retrieved. The Deputy informed Defendant that the substance would be tested and, if it was identified as a controlled substance, Defendant would be charged. At some point after the pat down search, the Deputy also asked for identification, Defendant produced his license, and the Deputy confirmed Defendant's current address. The interaction concluded when the Deputy asked Defendant if he still wanted a ride home, which he declined, and then Defendant left the scene.

**{5}** The district court denied Defendant's motion to suppress, concluding that "[t]he [D]eputy's encounter with [D]efendant was entirely consensual." The matter ultimately proceeded to trial, Defendant was convicted, and this appeal followed.

**DISCUSSION**

**{6}** On appeal, Defendant argues that the encounter was nonconsensual and he was unlawfully seized prior to asking the Deputy for a ride home.[1] Further, because of this unlawful seizure, Defendant contends, his subsequent consent to a pat down search was involuntary. If and when a seizure has occurred "are mixed questions of fact and law because they involve the mixture of facts and evaluative judgments." *See Simpson*, 2019-NMCA-029, ¶ 5 (internal quotation marks and citation omitted). We review such questions de novo. *See id.*

**{7}** Not all police encounters are seizures subject to the constitutional strictures of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *See State v. Williams*, 2006-NMCA-062, ¶ 9, 139 N.M. 578, 136 P.3d 579. "In determining whether an encounter between a citizen and police is consensual or constitutes a seizure, we consider whether, under the totality of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *State v. Soto*, 2008-NMCA-032, ¶ 6, 143 N.M. 631, 179 P.3d 1239 (internal quotation marks and citation omitted); *see also State v. Garcia*, 2009-NMSC-046, ¶ 37, 147 N.M. 134, 217 P.3d 1032 ("A person has been 'seized' only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave." (alteration, omission, internal quotation marks, and citation omitted)); *State v. Ramey*, 2020-NMCA-041, ¶ 13, 473 P.3d 13 ("In evaluating whether a reasonable person would feel free to leave, this Court looks to three factors: (1) the police conduct, (2) the person of the individual citizen, and (3) the physical surroundings existing at the time of the encounter." (alterations, internal quotation marks, and citation omitted)). "'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.'" *State v. Walters*, 1997-NMCA-013, ¶ 12, 123 N.M. 88, 934 P.2d 282 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).[2] "Possible indicators of a seizure are: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance

---

[1] Defendant additionally argues that the encounter cannot be justified under the community caretaker exception. Because we conclude that the encounter was consensual, we need not and therefore do not address this argument.

[2] "[F]or purposes of the Fourth Amendment, a seizure based on a show of authority, as opposed to physical force, requires submission to the assertion of authority. However, . . . our State Constitution does not require submission to authority, and instead, the 'free-to-leave' test . . . provides the standard for determining whether a person is seized for purposes of Article II, Section 10." *Simpson*, 2019-NMCA-029, ¶ 8 (internal quotation marks and citations omitted); *see also Garcia*, 2009-NMSC-046, ¶¶ 17, 35 (explaining that a seizure, under the Fourth Amendment, requires "either physical force or submission to an assertion of authority" and maintaining the "free-to-leave" standard under the State Constitution). Because Defendant advances his argument under the more protective "free-to-leave" standard applicable under our State Constitution, we limit our analysis accordingly.

with the officer's request might be compelled." *Garcia*, 2009-NMSC-046, ¶ 39 (internal quotation marks and citation omitted).

**{8}** None of these possible indicators of a seizure are present in this case. Specifically, multiple officers did not approach Defendant; the Deputy did not display his weapon; the Deputy did not physically touch Defendant; the Deputy's demeanor, according to Defendant's testimony, was "just as pleasant" during the encounter as it was during the suppression hearing; and the Deputy expressly told Defendant that he was not being stopped, detained, or arrested. *See Simpson*, 2019-NMCA-029, ¶¶ 14, 22 (examining the foregoing factors in concluding the defendant was not seized). Nor did the Deputy activate his vehicle's overhead emergency lights or sirens. *See id.* ¶¶ 14-15, 22 (observing that the officer did not employ lights or sirens in what was deemed a consensual encounter).

**{9}** Defendant nevertheless contends that this Court's decisions in *Ramey* and *Soto* support a determination that he was seized. In *Ramey*, this Court concluded that a reasonable person would not have felt free to leave an encounter in which an officer made multiple passes by the defendant walking alone just after midnight; pulled up behind the defendant and placed him in the police car's headlights; and asked the defendant for his name, date of birth, and where he lived. *See* 2020-NMCA-041, ¶¶ 2-6, 16-17. In *Soto*, two officers pulled alongside the defendant who was riding his bicycle, "began questioning [the d]efendant about his activities, asked [the d]efendant for identification, and retained [the d]efendant's driver's license in order to run a warrant check," which, this Court concluded, when combined with "the lateness of the hour and [the d]efendant's isolation on the road, conveyed to [the d]efendant that the officers expected [the d]efendant to comply with their requests." 2008-NMCA-032, ¶ 13.

**{10}** The encounter in this case is similar to the stops in *Ramey* and *Soto* in that the defendants were alone when they interacted with the officers after dark, *see Ramey*, 2020-NMCA-041, ¶ 3; *Soto*, 2008-NMCA-032, ¶¶ 2-3—albeit the encounter in this case occurred in the evening and the stops in *Ramey* and *Soto* occurred in the early morning hours. *See State v. Jason L.*, 2000-NMSC-018, ¶¶ 3, 17, 129 N.M. 119, 2 P.3d 856 (concluding that a seizure occurred where, among other things, the defendant was approached at night by officers). The similarities, however, end there. Unlike in *Ramey* and *Soto*, there is no evidence that the Deputy asked for Defendant's identification, address, or any other personal information prior to Defendant's request for a ride. *See Ramey*, 2020-NMCA-041, ¶¶ 16-17; *Soto*, 2008-NMCA-032, ¶¶ 8, 12. To the contrary, after introducing himself and affirmatively stating that Defendant was not being stopped, detained, or arrested, the Deputy's initial inquiries were limited to Defendant's well-being and finding out "what was—kind of—going on with" Defendant. *See State v. Baldonado*, 1992-NMCA-140, ¶ 18, 115 N.M. 106, 847 P.2d 751 (providing that "a trial court should ordinarily find no stop whenever officers pull up behind a stopped car, activate their lights, and approach the car in a deferential manner asking first whether the occupants need help"). Moreover, while the manner in which the officers in *Ramey* and *Soto* approached the defendants—i.e., engaging in multiple U-turns and pulling a police car behind or next to the defendant—evinced a show of authority, *see Ramey*,

2020-NMCA-041, ¶¶ 16-17; *Soto*, 2008-NMCA-032, ¶ 8, the Deputy in this case made no such similar show of authority when approaching Defendant. The Deputy instead stopped his vehicle short of Defendant who was approaching him on foot, got out of his vehicle, and approached Defendant on foot. *See Simpson*, 2019-NMCA-029, ¶ 19 (observing that an officer approaching a vehicle in a parking lot on foot, followed by a tap on the vehicle's window, is "more akin to an encounter with a pedestrian or with the occupant of a parked car than to a typical traffic stop").

**{11}** We acknowledge that certain aspects of the Deputy's encounter with Defendant inherently involved some show of authority. That is, Defendant was alone on an empty road and it was dark, necessitating the use of the patrol car's headlights to illuminate the area, when the Deputy approached in full uniform. We, however, conclude that this show of authority, intrinsic to the circumstances of the encounter on that road at that time of day, was insufficient to convert the encounter into a seizure. *See Simpson*, 2019-NMCA-029, ¶ 22 (concluding that the officer's "approach on foot and his minimally intrusive tap on [the d]efendant's car window did not constitute a 'show of authority' at such a level of 'accosting and restraint' that it would have conveyed the message to [the d]efendant that she was not free to leave").

**{12}** Considering the totality of the circumstances, we conclude that the Deputy's conduct would not have communicated to a reasonable person that they were not free to leave. *See Garcia*, 2009-NMSC-046, ¶ 37. We, accordingly, agree with the district court that Defendant's encounter with the Deputy was consensual and not an unlawful seizure. Further, because Defendant's argument that his consent to the pat down search was involuntary is premised on the contention that the encounter was an unlawful seizure—a contention we have just rejected—we likewise reject his argument that his consent to search was involuntary. *See generally State v. Olson*, 2012-NMSC-035, ¶ 18, 285 P.3d 1066 ("When a person voluntarily consents to a search, it is lawful regardless of whether the officer had constitutional justification to conduct an unwarranted search.").

**CONCLUSION**

**{13}** For the foregoing reasons, we affirm.

**{14}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**