# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMCA-070**

**Filing Date: August 22, 2019**

**No. A-1-CA-37208**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DIMITRICE EDWARDS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Certiorari Denied, October 25, 2019, No. S-1-SC-37919. Released for Publication November 26, 2019.

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}** Defendant Dimitrice Edwards conditionally pled guilty to possession of a controlled substance, in violation of NMSA 1978, Section 30-31-23(E) (2011), and was sentenced to eighteen months of supervised probation. Having reserved the right to appeal the district court's denial of his motion to suppress, Defendant now argues that his constitutional rights were violated based upon an absence of reasonable suspicion

underlying the arresting officer's *Terry* stop. Applying the United States Supreme Court's recent decision in *Utah v. Strieff*, 136 S. Ct. 2056 (2016), we conclude that Defendant's preexisting, independent, valid arrest warrant was an intervening cause that attenuated any otherwise unlawful seizure of Defendant or evidence from his person during a search incident to arrest. We therefore affirm the district court's denial of Defendant's motion to suppress.

## BACKGROUND

**{2}**     Clovis Police Department Officer Christian Townsend was on patrol at approximately 3:00 a.m. when he heard over his police radio that "shots had been fired" at 2221 Llano Estacado, an event venue. Upon learning that a Curry County Sheriff's deputy was already at the scene and requesting assistance from other law enforcement officers, Officer Townsend rushed to the location with his patrol unit's emergency lights and siren on, unaware if a shooter was present at the scene. Upon arrival, he saw "people leaving the scene" and decided to position his vehicle to "block[] the eastbound lanes of Llano Estacado [to prevent] traffic from moving." Officer Townsend observed there to be "approximately fifty people" in the roadway, in vehicles, and in the parking lot.

**{3}**     In order of proximity to him, Officer Townsend approached "the vehicles and [asked occupants] what they had seen or heard, [their] names or phone numbers or other basic information" and then, one by one, allowed them to leave. Defendant was a passenger in the rear seat of the third or fourth vehicle Officer Townsend approached. When questioned by Officer Townsend, the vehicle occupants collectively responded that none had "seen or heard anything," which was contrary to Officer Townsend's interviews with people in preceding vehicles. Also, the vehicle occupants claimed that they came to "pick somebody up," but had not yet done so, though all five seats in the vehicle were already occupied.

**{4}**     Suspicious, Officer Townsend began what he described as an "investigative detention," requesting identification from each person, including Defendant, who either handed Officer Townsend identification or provided his name and date of birth. Officer Townsend quickly discovered that Defendant had an outstanding warrant for his arrest, arrested Defendant, and when Defendant was later searched incident to his arrest, narcotics were found on his person. Defendant appeals his conviction and sentence associated therewith.

## DISCUSSION

**{5}**     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Yazzie*, 2019-NMSC-008, ¶ 13, 437 P.3d 182 (internal quotation marks and citation omitted). First, we review the district court's factual determinations for substantial evidence, and then review the district court's application of the law to those facts de novo. *State v. Tapia*, 2018-NMSC-017, ¶ 10, 414 P.3d 332. Defendant has not argued on appeal that "the New Mexico Constitution affords him greater protection than

that afforded under the United States Constitution[,]" and we review his claim only under the Fourth Amendment. *State v. Jason L.*, 2000-NMSC-018, ¶ 9, 129 N.M. 119, 2 P.3d 856.

**{6}** Assuming without deciding the merit of Defendant's challenges to the existence of reasonable suspicion related to the on-scene deputy's law enforcement bulletin and Officer Townsend's ensuing detention, identification, and arrest of Defendant, we turn directly to the issue upon which we affirm. *See State v. Gonzales*, 2011-NMCA-007, ¶ 13, 149 N.M. 226, 247 P.3d 1111 ("Even if we were to assume without deciding that [the federal statute at issue] was violated in this case, [the d]efendant . . . is not entitled to exclusion of the evidence."). That is, we first resolve whether, under United States Supreme Court precedent, Defendant's preexisting arrest warrant operates to excuse mistaken or unlawful police action preceding Defendant's arrest. Defendant argues that *Strieff* does not justify Officer Townsend's detention of him because the State did not "show how much time elapsed between [Officer Townsend's] act of obtaining [Defendant's] identification and the discovery of the contraband, or any intervening circumstances besides the discovery of the warrant via the impermissible request for [Defendant's] identification." Defendant further contends that "the police conduct was flagrant" because there were "three separate search-and-seizure violations of [Defendant's] rights." Asserting that Defendant was seized from the moment Officer Townsend initially began his interaction with the vehicle in which Defendant was a passenger, Defendant argues that the lack of reasonable suspicion to request his identification cannot be excused under *Strieff*.

**{7}** The State answers that under *Strieff*, the preexisting warrant for Defendant's arrest constitutes "an intervening circumstance" that in this instance excuses whatever constitutional impropriety this Court might find preceded Defendant's seizure, identification, warrant-based arrest, and the discovery of contraband in the ensuing search of Defendant's person. Speaking to the collective facts of this case, the State asserts "there is no evidence of police misconduct [despite the lack of evidence regarding] . . . the lapsed time between the possible illegality and the acquisition of evidence." We agree with the State and explain.

**Defendant's Arrest Warrant Was an Intervening Cause That Attenuated His Unlawful Seizure From Evidence Obtained After His Arrest**

**{8}** Long ago, the United States Supreme Court established the exclusionary rule in *Weeks v. United States*, 232 U.S. 383, 398 (1914), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643 (1961), disallowing as trial evidence that seized in contravention of the Fourth Amendment. *See Mapp*, 367 U.S. at 655 (declaring such evidence to be inadmissible as well in state courts under the Fourteenth Amendment's Due Process Clause). However, under the Fourth Amendment, the exclusionary rule is applied "only . . . where its deterrence benefits outweigh its substantial social costs," consistent with the principle that "[s]uppression of evidence . . . has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (internal quotation marks and citation omitted). Accordingly, the Supreme Court has recognized several

exceptions to the exclusionary rule, one of which is the attenuation doctrine, addressed in *Strieff* under very similar circumstances to those with which we are faced, and which held that "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." 136 S. Ct. at 2061 (internal quotation marks and citation omitted).

**{9}** Indeed, *Strieff* too evaluated an unconstitutional encounter during which an officer requested the defendant's identification, learned of a preexisting and valid arrest warrant, arrested the defendant, and discovered drugs and drug paraphernalia during a search incident to arrest. *Id.* at 2060. Considering three factors originally set forth in *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975), namely: (1) the lapsed time between the illegality and the acquisition of the evidence, (2) "the presence of intervening circumstances," and (3) "the purpose and flagrancy of the official misconduct," the Supreme Court in *Strieff* held that the "unlawful stop was sufficiently attenuated by the pre[]existing arrest warrant." *Strieff*, 136 S. Ct. at 2062-63; *see also Tapia*, 2018-NMSC-017, ¶ 15 (applying *Brown* factors to attenuation inquiry). *Strieff* noted as well that the officer that initiated the mistaken stop acted lawfully thereafter, that the warrant check "was a negligibly burdensome precaution for officer safety[,]" that the unlawful stop was not "part of any systematic or recurrent police misconduct[,]" and that the officer's instance of negligence "occurred in connection with a bona fide investigation." 136 S. Ct. at 2063 (internal quotation marks and citation omitted).

**{10}** We therefore turn to the facts of this case to ascertain whether or not the attenuation doctrine, as applied to the preexisting, active arrest warrant in *Strieff*, acts similarly here to permit the seizure of evidence from Defendant's person following his arrest, even if that seizure were otherwise unlawful. We proceed to apply the *Brown* factors to this case determine "whether the discovery of a valid arrest warrant was a sufficient intervening event to break the causal chain between the unlawful [detention of Defendant] and the discovery of drug-related evidence on [Defendant's] person." *Id.* at 2061.

**{11}** Beginning with the first *Brown* factor, the lapsed time between the illegality and the acquisition of the evidence, we agree with Defendant and the State that there is no evidence regarding how much time elapsed between Officer Townsend's unlawful detention of Defendant when he initially made contact with his vehicle, or in the alternative when Officer Townsend requested Defendant's identification. *See Tapia*, 2018-NMSC-017, ¶ 35. Generally, this factor weighs in favor of suppression "unless substantial time elapses between an unlawful act and when the evidence is obtained." *Strieff*, 136 S. Ct. at 2062 (internal quotation marks omitted). Because we lack information that would assist us in determining this factor, we conclude that it favors suppression.

**{12}** Second, we consider "any intervening circumstances that serve to attenuate the illegal detention from the discovery of the evidence." *Tapia*, 2018-NMSC-017, ¶ 36.

Here, because Defendant had a preexisting, untainted, valid arrest warrant, which obligated Officer Townsend to arrest Defendant when he discovered it, this factor "strongly favors" attenuation. *See Strieff*, 136 S. Ct. at 2062-63 (holding that the existence of an arrest warrant was an intervening circumstance where it "was valid, it predated [the officer's] investigation, and it was entirely unconnected with the [investigatory detention]"). Finally, "we assess the purpose and flagrancy of the police misconduct." *Tapia*, 2018-NMSC-017, ¶ 38. "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Strieff*, 136 S. Ct. at 2064. Here, Officer Townsend's investigation was clearly not "a suspicionless fishing expedition in the hope that something would turn up." *Id.* (internal quotation marks and citation omitted). Rather, Officer Townsend's aim was to investigate the report of a possible serious crime, a shooting, and so he sought to interview potential departing witnesses in order to ascertain whether they had information that could assist the investigation. At worst, Officer Townsend's mistake in detaining Defendant until he answered questions and provided his identity was negligent insofar as he lacked reasonable suspicion of criminal activity related to Defendant. This is especially so given that Officer Townsend was attempting to investigate a purported shooting contemporaneous to its reported occurrence. There is no evidence that Officer Townsend "approached and addressed Defendant for arbitrary reasons[,]" and similarly "nothing suggests that admission of the evidence will embolden police to engage in unconstitutional" investigatory detentions. *Tapia*, 2018-NMSC-017, ¶ 38. We cannot conclude that Officer Townsend detained Defendant for an improper purpose or that he was flagrant in his unlawful conduct. This factor, therefore, weighs in favor of attenuation. Accordingly, based upon our application of the *Brown* factors in a circumstance markedly similar to *Strieff*, we conclude that Defendant's arrest warrant was an intervening cause that broke the causal chain between Officer Townsend's unlawful detention of Defendant and the seizure of evidence from Defendant after his arrest. As such, under the attenuation doctrine, the evidence discovered on Defendant's person is not subject to the exclusionary rule. We therefore affirm the district court. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 ("[W]e will affirm the [district] court's decision if it was right for any reason so long as it is not unfair to the appellant for us to do so.").

**CONCLUSION**

**{13}** For the foregoing reasons, we affirm the district court's denial of Defendant's motion to suppress.

**{14}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**