# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-041**

**Filing Date: June 29, 2020**

**No. A-1-CA-37640**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**WILLIAM RAMEY,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Jarod K. Hofacket, District Judge**

Released for Publication October 6, 2020.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Victor E. Sanchez, Jr., Assistant Appellate Defender
Albuquerque, NM

for Appellant

## OPINION

**VARGAS, Judge**

**{1}** Defendant appeals his conviction for possession of a controlled substance, in violation of NMSA 1978, Section 30-31-23(E) (2011, amended 2019), following entry of a conditional plea. Defendant contends that the district court erred in denying his motion to suppress all evidence, including physical evidence, testimonial evidence, and statements made by Defendant. In support of his claim, Defendant argues that his right to be free from unreasonable seizure under the Fourth Amendment of the United States

Constitution and Article II, Section 10 of the New Mexico State Constitution was violated. That violation, he contends, requires the suppression of the evidence pursuant to the exclusionary rule because the discovery of a prior warrant did not purge the taint of the unconstitutional seizure. We agree with Defendant and therefore reverse.

**BACKGROUND**

**{2}** The Silver City Police Department has a practice whereby officers routinely pull up to unknown individuals walking at night and ask for their names and dates of birth. Officer Javier Hernandez testified during the suppression hearing that the purpose of this practice is to create a "database [of] people" who are walking around Silver City on any particular night so he could review the names in the event a crime was committed later in the night.

**{3}** At approximately 12:18 a.m., Defendant, on his way home from work, was walking alone on the sidewalk, traveling east along New Mexico Highway 180. While driving his patrol car east on New Mexico Highway 180, Officer Hernandez spotted Defendant walking along the highway. The officer drove past Defendant, made a U-turn, drove westbound, traveled past Defendant again, and then made a second U-turn to pull up behind him.

**{4}** Officer Hernandez testified that, at the time he spotted Defendant, he had not had previous contact with Defendant, he did not recognize him as someone with active warrants, he was not looking for anyone fitting Defendant's description, he did not recall reports of crimes committed in the vicinity of his encounter with Defendant, and Defendant was not acting suspiciously or in a way that made him think Defendant had committed a crime. Instead, Officer Hernandez testified, the reason he made contact with Defendant was simply because he was walking.

**{5}** Officer Hernandez parked his car less than fifty feet away from Defendant, shining his headlights on him. After stepping out of his car, Officer Hernandez began walking toward Defendant, who had stopped walking. The officer then initiated the following exchange:

> Officer Hernandez: What's up, brother?
>
> Defendant: [inaudible]
>
> Officer Hernandez: Good, and you?
>
> Defendant:  Walking home.
>
> Officer Hernandez: Yeah, where you live at?
>
> Defendant: Up there on Rosedale.

Officer Hernandez: Ok. I'm just doing a citizen contact, man. Just seeing who's out and about, okay? What's your name?

Defendant: Will.

Officer Hernandez: Will. What's your last name, Will?

Defendant: Ramey.

Officer Hernandez: How do you spell your last name?

Defendant: R-A-M-E-Y.

At this point, Officer Hernandez, who was standing a few feet away from Defendant, began writing down Defendant's information. He then continued with the exchange:

Officer Hernandez: You live over there on Rosedale? That what you said?

Defendant: Yeah.

Officer Hernandez: What was your first name again?

Defendant: Will.

Officer Hernandez: Will. Okay what's your date of birth, Will?

Defendant provided his date of birth, and the officer continued:

Officer Hernandez: Alright, man, you have a good one. Just be careful on your way home, okay?

Defendant: Okay.

Defendant began walking away from Officer Hernandez when the officer said something about Rosedale, to which Defendant responded, "Hell yeah! [inaudible]." Officer Hernandez replied, "I got you, man." Still standing in the same spot where he stopped to speak with Defendant, Officer Hernandez immediately called into dispatch to tell them he had a name and date of birth for dispatch to check. After dispatch responded, Officer Hernandez provided Defendant's information.

{6}     When Officer Hernandez returned to his car dispatch informed him that Defendant had an outstanding warrant for driving with a revoked license. Upon learning this information, Officer Hernandez pulled up to Defendant again and arrested him on the warrant. While conducting a search incident to arrest, Officer Hernandez discovered methamphetamine on Defendant's person.

**{7}** Defendant filed a motion to suppress the evidence seized during the search incident to arrest. The district court denied Defendant's motion to suppress, concluding the circumstances demonstrated the encounter was consensual and, therefore, not a seizure. Defendant appealed to this Court pursuant to a conditional guilty plea to the possession of a controlled substance charge, which reserved his right to appeal the denial of his motion to suppress.

## DISCUSSION

**{8}** Defendant's appeal raises the following issues: (1) whether Officer Hernandez's actions of stopping Defendant to ask for his name and date of birth constituted a seizure; and (2) whether the evidence derived from any seizure must be suppressed.

### I. Standard of Review

**{9}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Yazzie*, 2019-NMSC-008, ¶ 13, 437 P. 3d 182 (internal quotation marks and citation omitted). We begin by reviewing the district court's factual determinations for substantial evidence. *Id.* "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). We give "deference to the district court's review of the testimony and other evidence presented," and review contested facts "in a manner most favorable to the prevailing party." *Id.* (internal quotation marks and citations omitted). We then review the district court's application of the law to those facts de novo. *Id.*

### II. Requesting Defendant's Identity Constituted a Seizure Under the Fourth Amendment

**{10}** Before examining whether Officer Hernandez's conduct in requesting Defendant's name and date of birth violated the Fourth Amendment, we must first consider whether, under the totality of the circumstances, Officer Hernandez's actions of stopping Defendant as he walked home constituted a seizure under the Fourth Amendment.

**{11}** "Law enforcement officers generally need no justification to approach private individuals on the street to ask questions." *State v. Gutierrez*, 2008-NMCA-015, ¶ 9, 143 N.M. 522, 177 P.3d 1096; *State v. Williams*, 2006-NMCA-062, ¶ 11, 139 N.M. 578, 136 P.3d 579 ("An officer may approach a person to ask questions or request identification, without any basis for suspecting that particular individual, as long as the police do not convey a message that compliance with their requests is required." (internal quotation marks and citation omitted)). Indeed, "[p]olice contact is consensual so long as a reasonable person would feel free to disregard the police and go about his business or to decline the officers' requests or otherwise terminate the encounter." *State v. Murry*, 2014-NMCA-021, ¶ 13, 318 P.3d 180 (alteration, internal quotation marks, and citation omitted).

**{12}** However, "a person is seized within the meaning of the Fourth Amendment when, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Id.* ¶ 12 (alterations, internal quotation marks, and citation omitted). "[I]f an officer conveys a message that an individual is not free to walk away, by either physical force or a showing of authority, the encounter becomes a seizure under the Fourth Amendment." *Id.* ¶ 13 (internal quotation marks and citation omitted). Instances of seizure by a show of authority, however, also "requires submission to the assertion of authority." *Id.* (internal quotation marks and citation omitted).

**{13}** To determine "whether a person was seized, we evaluate: (1) the circumstances surrounding the contact, including whether police used a show of authority; and (2) whether the circumstances of the contact reached such a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave." *Id.* ¶ 14 (internal quotation marks and citation omitted). "In evaluating whether a reasonable person would feel free to leave, [this Court] look[s] to three factors: (1) the police conduct, (2) the person of the individual citizen, and (3) the physical surroundings existing at the time of the encounter." *Williams*, 2006-NMCA-062, ¶ 13. At issue in the present case is whether the circumstances surrounding the initial encounter between Officer Hernandez and Defendant conveyed a message to Defendant that he was not free to leave.

**{14}** We considered facts similar to these in *State v. Soto*, 2008-NMCA-032, 143 N.M. 631, 179 P.3d 1239. In *Soto*, the testimony established that it was the practice of the Ruidoso Downs Police Department to routinely pull people over to obtain information about their identities to assist officers in potentially solving crimes that occurred later in the night. *Id.* ¶ 2. At about 2:30 a.m., two Ruidoso Downs Police Officers observed the defendant riding his bicycle on a public service road. *Id.* Without activating their lights, the officers pulled alongside the defendant, at which point the defendant stopped his bicycle. *Id.* ¶ 3. The officers asked where the defendant was going. *Id.* The defendant explained he was going home and when he was unable to give an address, one of the officers asked for his identification. *Id.* The defendant provided the officers with his driver's license, and the officers ran a warrant check on him. *Id.* The officers discovered that the defendant had an outstanding felony warrant and arrested him. *Id.* During the search incident to arrest, officers discovered that the defendant had methamphetamine in his possession. *Id.*

**{15}** Rejecting the state's argument that the encounter was consensual, this Court held that the defendant was seized within the meaning of the Fourth Amendment. *See id.* ¶ 13. We explained that the officers' actions of pulling up next to and stopping the defendant's bicycle, their questioning of the defendant's activities, their request for his identification, their conduct in retaining the defendant's driver's license to run a warrant check, the lateness of the hour, and the defendant's "isolation" on the service road "conveyed to [the d]efendant that the officers expected [the d]efendant to comply with their requests." *Id.* Accordingly, we held that under the totality of the circumstances, a

reasonable person "would not feel free to disregard the officers or terminate the encounter." *Id.* (alteration, internal quotation marks, and citation omitted).

**{16}** Here, Defendant was walking alone at 12:30 a.m., going from work to his home with no other people walking in the area. Officer Hernandez was driving in a patrol vehicle when he passed by Defendant, made a U-turn, passed by him again, and made another U-turn before pulling up behind Defendant and parking his vehicle, with his headlights shining on Defendant. Defendant had stopped walking when Officer Hernandez stepped out of his patrol car, and stood in the same spot as Officer Hernandez walked toward him. Officer Hernandez approached Defendant, coming within a few feet of him, asked where Defendant lived, and asked for his name and date of birth.

**{17}** The State argues that because the conversational tone was "cordial, friendly and not remotely confrontational" no seizure occurred. Additionally, the State argues that this case is distinguishable from *Soto* because Officer Hernandez's contact with Defendant was "far more brief and informal," he did not ask for details about where Defendant was going,[1] and he did not request or retain Defendant's identification. Notwithstanding these points of distinction, we are still faced with circumstances in which a reasonable person would not have felt free to disregard Officer Hernandez's questions and walk away. Based on Defendant's isolation in the area, the lateness of the hour, Officer Hernandez's conduct in passing Defendant and performing two U-turns before parking behind Defendant with his headlights shining on Defendant, Defendant's conduct in stopping when the officer parked behind him, Officer Hernandez's question about where Defendant lived, and Officer Hernandez's request for Defendant's name and date of birth, a reasonable person would not have felt free to leave. *See id.*; *Williams*, 2006-NMCA-062, ¶ 11. Therefore, we conclude that Defendant was seized under the Fourth Amendment when Officer Hernandez stopped him and asked him questions. Having concluded Defendant was seized within the meaning of the Fourth Amendment, we now consider whether the evidence derived from this seizure is admissible or must be suppressed under the Fourth Amendment.

### III.    The Evidence Must Be Excluded

**{18}** "As a general rule, the federal constitution requires suppression of evidence obtained in a manner that runs afoul of the Fourth Amendment." *State v. Tapia*, 2018-NMSC-017, ¶ 13, 414 P.3d 332 (omission, internal quotation marks, and citation omitted). This "exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Id.* (omission, internal quotation marks, and citation omitted). Notwithstanding the general rule that evidence obtained as a result of an improper seizure should be excluded, the United States Supreme Court has identified three exceptions to the exclusionary rule: the

---

[1] We note that upon Defendant informing Officer Hernandez that Defendant was walking home, Officer Hernandez asked where he lived. He did not, however, ask for more information after Defendant told him the street on which his home was located.

independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. *Id.* ¶ 14.

**{19}** Rather than argue that the seizure of Defendant in this case was justified by reasonable suspicion or another exception to the warrant requirement, *see State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 ("Warrantless seizures are presumed to be unreasonable and the [s]tate bears the burden of proving reasonableness." (internal quotation marks and citation omitted)), the State contends that even if Defendant was seized, any evidence obtained following the seizure is nevertheless admissible under the attenuation doctrine. The attenuation doctrine provides that "[e]vidence is admissible when the connection between [the] unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Tapia*, 2018-NMSC-017, ¶ 14 (internal quotation marks and citation omitted).

**{20}** To evaluate whether the relationship between the unlawful seizure and the challenged evidence has become "sufficiently weak [so as] to dissipate any taint" that results from the original illegality, the United States Supreme Court identified three factors relevant to the inquiry: "(1) the lapsed time between the illegality and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." *Id.* ¶ 15 (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

**{21}** First, we note that only six minutes elapsed between the initial seizure and the discovery of the methamphetamine. Because the temporal proximity factor "[g]enerally . . . weighs in favor of suppression unless substantial time elapses between an unlawful act and when the evidence is obtained[,]" *State v. Edwards*, 2019-NMCA-070, ¶ 11, 452 P.3d 413 (internal quotation marks and citation omitted), we weigh this factor in favor of suppression. *See Utah v. Strieff*, ___ U.S. ___, ___, 136 S. Ct. 2056, 2062 (2016) (explaining that when evidence is discovered "only minutes after the illegal stop[,] . . . such a short time interval counsels in favor of suppression").

**{22}** The second factor, whether there existed intervening circumstances attenuating the initial seizure from the discovery of the evidence, however, strongly favors attenuation. After obtaining Defendant's name and date of birth, Officer Hernandez transmitted the information to dispatch who notified the officer that Defendant had a valid, preexisting arrest warrant that was entirely unconnected with the initial seizure. When a defendant has "a preexisting, untainted, valid arrest warrant, which obligate[s an officer] to arrest [the d]efendant when [the officer] discover[s] it," this intervening circumstance "strongly favors attenuation." *Edwards*, 2019-NMCA-070, ¶ 12 (internal quotation marks omitted); *see Strieff*, 136 S. Ct. at 2062 ("In this case, the warrant was valid, it predated [the] Officer['s] investigation, and it was entirely unconnected with the stop.").

**{23}**     Finally, we consider the purpose and flagrancy of the police misconduct, described as a "particularly significant," factor by the United States Supreme Court. *Id.*. "[T]o be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Edwards*, 2019-NMCA-070, ¶ 12 (internal quotation marks and citation omitted).

**{24}**     We have previously explained that when "police stop[ a d]efendant on the basis of nothing other than the vague notion that they would obtain [the d]efendant's personal information from him, and without any further suspicion, they [run] a warrant check on him[, t]he purpose of the stop—to obtain information from [the d]efendant—[is] directly related to [the d]efendant's ultimate arrest." *Soto*, 2008-NMCA-032, ¶ 27; *see Strieff*, 136 S. Ct. at 2064 (rejecting the defendant's argument that the officer's detention of a defendant to ask what he was doing at a residence the officer was surveilling for drug activity was purposeful and flagrant, stating that the officer's actions were "not a suspicionless fishing expedition in the hope that something would turn up." (internal quotation marks and citation omitted)); *Tapia*, 2018-NMSC-017, ¶ 38 (concluding police misconduct was neither purposeful nor flagrant because "[n]othing in the record indicates that [the officer] initiated the traffic stop for the specific purpose of investigating [the d]efendant or for some other merely pretextual reason."). Therefore, to weigh in favor of suppression, a defendant must demonstrate "purposeful and flagrant official misconduct where: (1) the impropriety was obvious, or the official knew his conduct was likely unconstitutional but continued nonetheless; or (2) the misconduct was investigatory in design and purpose." *State v. Monafo*, 2016-NMCA-092, ¶ 15, 384 P.3d 134.

**{25}**     Here, Officer Hernandez testified that it was his practice when working the night shift, regardless of whether a crime had been reported or not, to stop anyone he did not know and ask for their name and date of birth. He explained that his reason for doing this was to establish a database of people walking around Silver City at night, so that if a crime was committed later in the night, he could review the names of the people with whom he had had contact. This was a standard practice of the Silver City Police Department.

**{26}**     Notwithstanding his testimony that the purpose behind his stop of Defendant was part of his practice to establish a database, we note that Officer Hernandez did not simply add Defendant to his list and continue with his shift. Instead, before he even left the spot where he stood speaking with Defendant, he contacted dispatch, and provided Defendant's information to perform a warrant check on Defendant—all without any suspicion that Defendant had engaged in or was engaging in criminal activity. *Compare Soto*, 2008-NMCA-032, ¶ 27 (observing that the "police stopped [the d]efendant on the basis of nothing other than the vague notion that they would obtain [the d]efendant's personal information from him, and without any further suspicion, they ran a warrant check on him"), *with Strieff*, 136 S. Ct. at 2063 (concluding that the officer "was at most negligent" in suspecting the defendant of criminal activity), *Tapia*, 2018-NMSC-017, ¶ 38 (concluding that the record was devoid of evidence "that [the officer] initiated the traffic stop for the specific purpose of investigating [the d]efendant or for some other

merely pretextual reason[;] . . . rather, she addressed [the d]efendant based on her observation that he was not wearing a seat belt"), and *Edwards*, 2019-NMCA-070, ¶ 12 (concluding that the police "investigation was clearly not a suspicionless fishing expedition in the hope that something would turn up[; r]ather, [the officer]'s aim was to investigate the report of a possible serious crime, a shooting, and so he sought to interview potential departing witnesses" (internal quotation marks and citation omitted)). As the Supreme Court of Kansas concluded:

> In applying the third [attenuation] factor, we also note that when law enforcement officers approach random citizens, request identification, and run warrant checks for no apparent reason, the officers clearly are performing investigatory detentions designed and executed in the hope that something might turn up. . . . Regardless of whether a suspicionless detention to identify a citizen and check that citizen for outstanding arrest warrants is characterized as a standard practice, a field interview, a pedestrian check, or a "fishing expedition," such a detention can, and often will, demonstrate at least some level of flagrant police conduct.

*State v. Moralez*, 300 P.3d 1090, 1103 (Kan. 2013), *abrogated on other grounds as recognized by State v. Tatro*, 445 P.3d 173, 180 (Kan. 2019).

**{27}** Although Officer Hernandez characterized the basis for stopping Defendant and requesting his name and date of birth as falling within a standard practice of collecting names in case criminal activity occurred later on that night, his conduct demonstrated that his true purpose in gathering Defendant's information was to run a warrant check. Accordingly, "the misconduct was investigatory in design and purpose," *Monafo*, 2016-NMCA-092, ¶ 15, and therefore weighs in favor of suppression. Under these circumstances, we conclude admission of the evidence in Defendant's possession would embolden police to engage in unreasonable seizures and, therefore, this factor weighs in favor of suppression. *See Strieff*, 136 S. Ct. at 2063 (explaining that the third factor contemplates "exclusion only when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant"); *see also id.* at 2063-64 (concluding that the officer's decision to stop the defendant was an isolated incident and "was at most negligent," but observing that "[w]ere evidence of a dragnet search presented here, the application of the *Brown* factors could be different"); *cf. Tapia*, 2018-NMSC-017, ¶ 38 ( concluding that "[t]his third consideration tips the balance away from suppression because nothing suggests that admission of the evidence will embolden police to engage in unconstitutional traffic stops"); *Edwards*, 2019-NMCA-070, ¶ 12 (holding that "[t]here is no evidence that [the officer] approached and addressed [the d]efendant for arbitrary reasons, and similarly nothing suggests that admission of the evidence will embolden police to engage in unconstitutional investigatory detentions." (alteration, internal quotation marks, and citation omitted)).

**{28}** Applying the three attenuation factors, we hold that the evidence discovered on Defendant's person was inadmissible because the seizure was not sufficiently attenuated by the preexisting arrest warrant. *Compare Soto*, 2008-NMCA-032, ¶¶ 26-27

(excluding evidence obtained after an officer discovers and executes a preexisting arrest warrant, because the first and third factors weighed in favor of suppression), *with Strieff*, 136 S. Ct. at 2063 ("Although the illegal stop was close in time to [the defendant's] arrest, that consideration is outweighed by two factors supporting the [s]tate."), *Tapia*, 2018-NMSC-017, ¶¶ 35, 37-38 (concluding exclusion of the evidence is unnecessary when the first factor weighs in favor of suppression but the second and third factors weigh in favor of attenuation), and *Edwards*, 2019-NMCA-070, ¶¶ 11-12 (same). Having concluded Defendant's right is protected under the Fourth Amendment of the United States Constitution, we need not reach his argument under Article II, Section 10 of the New Mexico Constitution. *See State v. Ketelson*, 2011-NMSC-023, ¶ 10, 150 N.M. 137, 257 P.3d 957 ("If the right is protected by the federal constitution, then the state constitutional claim is not reached.").

**CONCLUSION**

**{29}** For the foregoing reasons, we reverse the district court's order denying Defendant's motion to suppress the evidence obtained as a result of Defendant's unlawful seizure, and we remand to the district court to permit Defendant to withdraw his conditional plea. *See State v. Jean-Paul*, 2013-NMCA-032, ¶ 34, 295 P.3d 1072 (permitting the defendant to withdraw her conditional plea after prevailing on her appeal of the district court's order denying her motion to suppress).

**{30}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**