This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38675**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**JOSEPH GABRIEL BOLAGH,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hart, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Charles Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}**     The State appeals an order suppressing evidence, asserting both that a sheriff's deputy had a reasonable suspicion of criminal activity before stopping Defendant and that even if the stop were unconstitutional, evidence resulting from a subsequent search was admissible pursuant to the attenuation doctrine. [MIO 5, 6, 9] This Court issued a notice of proposed summary disposition proposing to affirm the district court's suppression of evidence. [CN 5] Having duly considered the State's memorandum in opposition to that proposed disposition, we remain unpersuaded and affirm.

{2} The facts surrounding the stop of Defendant are summarized in our notice, which proposed to affirm the district court's finding that the deputy lacked reasonable suspicion to stop Defendant. [CN 2-3] In its memorandum in opposition to that notice, the State now suggests that the deputy could have reasonably suspected Defendant of either shoplifting or some unspecified crime arising from the act of displaying a knife. [MIO 7-8]

{3} With regard to the State's shoplifting theory, the relevant information available to the deputy was that Defendant had been walking around the store placing items in and out of his pocket. In order to arrive at a reasonable suspicion of shoplifting despite the fact that Defendant did not attempt to leave the store with any merchandise, the State posits an inference that Defendant had put things in his pocket "with the intention of converting it without paying for it" but took them back out because he knew he had been seen. [MIO 7] The State does not point to any evidence that Defendant knew he was seen. Instead, the State merely asks this Court to set aside the deputy's testimony that he did not believe Defendant had committed a crime and also to set aside that deputy's statement suggesting that his purpose was to remove Defendant because "the store had the right to refuse service." [MIO 4] We are unpersuaded that the State's proposed conjecture regarding Defendant's possible criminal intent, without any circumstantial evidence of that intent, can amount to a reasonable suspicion of shoplifting.

{4} Similarly, although the deputy disclaimed any suspicion that Defendant had committed a crime, the State suggests that the district court could have found that the deputy's knowledge that someone at the store knew there was a knife in Defendant's right pocket made it "reasonable to infer" that Defendant "had displayed it at some point." [MIO 8] The State does not point to any evidence that Defendant had displayed the knife, much less any evidence that he had done so in a way that would amount to criminal activity. Indeed, the district court made specific findings that the deputy "was informed that no threats had been made with the knife" and he "knew no threats had been made with the knife." [RP 99, 100]

{5} On appeal, however, the State asks us to disregard those findings on the basis of an "ambiguous" notation in a dispatch report, apparently in reference to the knife, stating: "Neg[ative] threats [were] made with it." [MIO 8] In its memorandum, the State argues that the word "negative" could mean either that no threats were made or perhaps that such threats were made and that those threats were "disagreeable." [Id. (quoting *Webster's New Collegiate Dictionary* 768 (1977))] While it does seem unlikely that being threatened with a knife is an agreeable experience, it seems equally unlikely that a police dispatcher would need to explain that the experience is a negative one. More importantly, the State's argument that the dispatch report is ambiguous would require this Court to set aside a historical fact found by the district court. *See State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032 (explaining that appellate courts must "defer to the district court's findings of historical facts and witness credibility" before "placing the constitutional requirement of reasonableness in [a] factual context" (internal quotation marks and citation omitted)). With regard to such findings, this Court does not reweigh the evidence before the district court. *See State v. Griffin*,

1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156 (explaining that an appellate court does not "substitute its judgment for that of the fact[-]finder" (internal quotation marks and citation omitted)).[1]

{6}     Ultimately, we are unpersuaded that the State's conjecture regarding Defendant's possible intent or hypothetical "display" of a knife can amount to reasonable inferences of criminal activity under the circumstances of this case.

{7}     Finally, the State argues that, despite an unconstitutional stop, evidence resulting from the subsequent search of Defendant should have been admissible pursuant to the attenuation doctrine.[2] [MIO 9] The sole contested issue with regard to the applicability of the attenuation doctrine is whether the State met its burden of establishing that the deputy did not detain Defendant "for an improper purpose [nor was he] flagrant in his unlawful conduct." *State v. Edwards*, 2019-NMCA-070, ¶ 12, 452 P.3d 413. In particular, the State challenges the district court's finding that once Defendant was removed from the store, the deputy's "decision to continue to handcuff Defendant and detain him . . . can only be described as a suspicionless fishing expedition in the hope that something would turn up." [RP 111 (citation and internal quotation marks omitted); MIO 15] As our notice of proposed disposition explained:

> the district court characterized the deputy's conduct after removing Defendant from the grocery store as a "fishing expedition." [DS 8] Although the State takes issue with that characterization [DS 10], its docketing statement does not offer any other explanation for what the deputy was doing while standing outside the grocery store with a handcuffed man who was, as the deputy apparently testified, not suspected of any criminal activity while inside the store.

[CN 4-5]

{8}     Rather than offer any legitimate purpose for Defendant's continued detention once he and the deputy were outside of the store, however, the State's memorandum describes the conversation between the deputy and Defendant. [MIO 18] That description emphasizes that most of the questions asked by the deputy were "prompted" by Defendant, and most were not intended to elicit anything incriminating. [Id.] The State also points out the deputy's testimony that the conversation was "mainly just small talk while [another] deputy made sure that the store didn't want to . . . press charges for anything that may have happened in the store." [MIO 4]

{9}     Although the absence of pointed questions may establish that the deputy was not interrogating Defendant, we are not persuaded that these facts contradict the court's

_____

1We also note that the State makes no attempt address the district court's explicit finding that the deputy, himself, testified that "[h]e was informed that no threats had been made with the knife." [RP 73]
2As our notice of proposed disposition pointed out, is not clear that this issue is preserved for our review. [CN 4] We conclude, however, that because we are ultimately affirming the district court's suppression order, we need not resolve the question of preservation.

finding that the deputy was engaged in a fishing expedition. The deputy's testimony conceded that—as he stood outside the store talking with Defendant, who was in handcuffs—he had no information that Defendant had committed a crime. [MIO 17] He was, however, apparently waiting to see whether anyone associated with the store wanted to "press charges for anything that may have happened." [MIO 4] And he also testified that, despite the absence of any reason to believe that Defendant had committed a crime, an "investigation was ongoing." [MIO 17]

**{10}** We conclude that the district court was justified in finding that the deputy, who did not have a reasonable suspicion of criminal activity and who had already removed Defendant from the store, nonetheless continued to detain Defendant in handcuffs "in the hope that something would turn up." *Edwards*, 2019-NMCA-070, ¶ 12. Thus, for the reasons stated both here and in our notice of proposed summary disposition, we affirm the order on appeal.

**{11}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**