This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38633**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**JAMES CHAPIN,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Jarod K. Hofacket, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant James Chapin entered a guilty plea for possession of a controlled substance, methamphetamine, pursuant to NMSA 1978, Section 30-31-23 (2011, amended 2021), and reserved his right to appeal the district court's denial of his motion to suppress based on a violation of his right to be free from unreasonable searches and seizures. On appeal, Defendant contends the district court erred in denying his motion to suppress all evidence, claiming that (1) his right to be free from unreasonable search and seizure under the Fourth Amendment of the United States Constitution and Article

II, Section 10 of the New Mexico Constitution was violated because the search of his home without a warrant did not fall under the emergency assistance doctrine, and (2) the discovery of a prior warrant did not purge the taint of the unconstitutional seizure. We reverse.

**{2}**     We rely on the district court's factual findings in this memorandum opinion, which are not contested by the parties.

## DISCUSSION

### I.     The Detention and Search of Defendant Was Not Justified Under the Emergency Assistance Doctrine Under the Fourth Amendment

**{3}**     Defendant challenges the district court's ruling that the officer's entry into Defendant's home was justified under the emergency assistance doctrine under both the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. Because we determine the search violated the Fourth Amendment, we need not address the New Mexico Constitution. *See State v. Ketelson*, 2011-NMSC-023, ¶ 10, 150 N.M. 137, 257 P.3d 957 ("If the right is protected by the federal constitution, then the state constitutional claim is not reached.").

**{4}**     When reviewing a district court's denial of a motion to suppress, we consider whether its findings of fact are supported by substantial evidence. *See State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171. We review the evidence in the light "most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We then consider the district court's legal conclusions de novo. *See Leyba*, 1997-NMCA-023, ¶ 8.

**{5}**     Warrantless searches and seizures "are presumptively unreasonable," subject to a few specific, narrowly defined exceptions. *State v. Cordova*, 2016-NMCA-019, ¶ 8, 366 P.3d 270 (internal quotation marks and citation omitted). The exception relevant to this appeal is the emergency assistance doctrine. *See State v. Ryon*, 2005-NMSC-005, ¶¶ 24-25, 137 N.M. 174, 108 P.3d 1032. Under this exception, police, in their community caretaker role, may enter a home without a warrant or consent. *See State v. Trudelle*, 2007-NMCA-066, ¶¶ 34-35, 142 N.M. 18, 162 P.3d 173. The doctrine justifies a warrantless entry when police have "a strong perception that action is required to protect against imminent danger to life or limb, an emergency that is sufficiently compelling to make a warrantless entry into the home objectively reasonable under the Fourth Amendment." *Ryon*, 2005-NMSC-005, ¶ 31.

**{6}**     For the emergency assistance doctrine to apply, (1) "police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property," and (2) "there must be some reasonable basis, approximating probable cause, to associate the emergency

with the area or place to be searched." *State v. Yazzie*, 2019-NMSC-008, ¶ 23, 437 P.3d 182 (alterations, internal quotation marks, and citations omitted).

**{7}** In this appeal, an officer entered Ms. Holland's home to perform a welfare check after dispatch received a call from Holland's sister that she had not heard from Holland in two weeks and "some people" were in the home with her and may be harming her. Under these circumstances, we assume that the officer's entrance into the home based on Holland's need for emergency aid was objectively reasonable, and we turn to the second factor of the doctrine—the scope of the search—to assess whether the officer "had some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *Id.* ¶ 38 (internal quotation marks and citation omitted). "When police officers enter a home under the emergency assistance doctrine, they are not permitted to do more than is reasonably necessary to ascertain whether someone is in need of assistance and to provide that assistance." *Id.* ¶ 38 (omission, internal quotation marks, and citation omitted). "Officers do not have carte blanche to rummage for evidence if they believe a crime has been committed. There must be a direct relationship between the area to be searched and the emergency." *Ryon*, 2005-NMSC-005, ¶ 38 (internal quotation marks and citation omitted). "A search upon entry must be limited to the exigencies which justified its initiation." *Yazzie*, 2019-NMSC-008, ¶ 38 (alteration, internal quotation marks, and citation omitted). In sum, we must assess "whether the manner and scope of a search following an entry under the emergency assistance doctrine were reasonable." *Id.*

**{8}** In this case, after speaking with Holland, who denied anyone harming her, the officer asked the other two residents of the house, a woman and Defendant,[1] for identification and dates of birth. The officer ran the names through dispatch and discovered Defendant had an outstanding warrant. During a search incident to arrest, a baggie with what was later discovered to be methamphetamine was found. The district court concluded that the officer's inquiry into the identity of the residents of the home was limited in scope to the parts of the home that were associated with the emergency. The district court determined that because the initial concern was that the occupants of the home were harming Holland, identifying the occupants was therefore directly related to the emergency. We disagree.

**{9}** We conclude the evidence demonstrates that the officer's investigation into Defendant's name and date of birth went beyond to the exigencies that justified the initial entry. *See Ryon*, 2005-NMSC-005, ¶ 15. The officer was sent to the home based on concern that people in Holland's home may be harming her. The officer made contact with Holland inside the home, observed her, and spoke to her. Holland stated no one was hurting her, she explained she had medical conditions for which she was seeing doctors, and she explained she would call her sister who initiated the welfare check. Holland also told the officer to leave. To the extent the officer had concerns about a lock on the inside of Holland's bedroom door, he asked her about the lock, and Holland explained she did not lock the bedroom door. After this conversation, the

---

[1]The parties do not dispute that Defendant had a reasonable expectation of privacy in his home, and we agree. *See Yazzie*, 2019-NMSC-008, ¶ 17.

emergency that justified warrantless entry into the home resolved. It was unnecessary and unreasonable for the officer to ascertain Defendant's name and birthdate and request that dispatch run a query *after* the officer questioned Holland, and resolved that she was alive, not injured, and able to communicate that she was safe. The officer's actions from that point forward were investigatory and therefore improper.

**{10}**     The State relies on *Schuster v. New Mexico Department of Taxation and Revenue*, 2012-NMSC-025, 283 P.3d 288, and *State v. Reynolds*, 1995-NMSC-008, 119 N.M. 383, 890 P.2d 1315, to argue that the scope of the search was reasonable under the emergency aid exception. We have reviewed both cases and neither support the argument that the scope of the search, once the emergency resolved, was reasonable. In *Schuster*, our Supreme Court determined that it was reasonable for an officer, who watched a driver of a motorcycle fall over on its side in a parking lot, to continue investigating an incident until the officer "was satisfied" that the driver did not need assistance. 2012-NMSC-025, ¶¶ 26-27. The officer was permitted to make contact with Defendant in his community caretaking role and expand his actions to investigating a DWI based on the welfare check. *Id.* ¶¶ 28-29. This does not conflict with our holding.

**{11}**     In *Schuster*, speaking to the driver was directly related to providing assistance based on the motorcycle falling over. *See id.* ¶¶ 27-28. By contrast, in this case the officer spoke to Holland who said she was not being harmed and asked him to leave. At that point, his duty to provide emergency assistance was fulfilled. Questioning Defendant and seizing him in his home while the officer ran the warrant was outside of the scope necessary to address the emergency after Holland confirmed she was not being harmed.

**{12}**     In *Reynolds*, our Supreme Court considered whether law enforcement is permitted to ask for a driver's license, registration, and proof of insurance when an officer stops an automobile for safety reasons under the New Mexico Constitution. 1995-NMSC-008, ¶ 1. The Court's analysis was based on the officer's statutory authority to request the documents in a traffic stop. *Id.* ¶¶ 12-13. As no traffic stop nor statutory authority is at issue in this case, *Reynolds* does not control our inquiry here.

**{13}**     We conclude that requesting Defendant's identifying information went beyond what was reasonably necessary to provide assistance to Holland, and we reverse the district court's decision to deny Defendant's motion to suppress.

## II.     Discovery of the Outstanding Warrant Did Not Justify the Seizure

**{14}**     The State contends that application of the attenuation doctrine justifies the seizure, pursuant to both the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution, preventing suppression of the evidence. Defendant contends that the doctrine is not applicable under the circumstances.

**{15}**     The attenuation doctrine is one of several exceptions to the exclusionary rule. *See State v. Edwards*, 2019-NMCA-070, ¶ 8, 452 P.3d 413. The main inquiry under the

attenuation doctrine "is whether the evidence to which instant objection is made has been [discovered] by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *State v. Monafo*, 2016-NMCA-092, ¶ 12, 384 P.3d 134 (omission, internal quotation marks, and citation omitted). To purge a taint of initial illegality, there must be a break in the causal chain between the illegality and discovery of the evidence. *See Edwards*, 2019-NMCA-070, ¶ 10.

**{16}** Our task is to balance three factors to "determine if seized evidence has been purged of the taint of the original illegality." *State v. Tapia*, 2018-NMSC-017, ¶ 15, 414 P.3d 332. The factors are: "(1) the lapsed time between the illegality and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." *Edwards*, 2019-NMCA-070, ¶ 9 (internal quotation marks and citation omitted).

**{17}** We begin by noting that Defendant's valid warrant is an intervening circumstance that favors attenuation. *See id.* ¶ 12. The next factor, however—the temporal proximity of the illegal stop and the acquisition of evidence—weighs in favor of suppression. *See State v. Soto*, 2008-NMCA-032, ¶ 26, 143 N.M. 631, 179 P.3d 1239 (noting that the short time between the defendant's unlawful detention and the search weighed in favor of detention). It was less than fifteen minutes after requesting Defendant's identification, the entirety of which during that time Defendant was detained, that the officers found the methamphetamine in Defendant's pocket. *See State v. Ramey*, 2020-NMCA-041, ¶ 21, 473 P.3d 13 (concluding that when six minutes elapsed between the initial seizure and the discovery of the evidence, the temporal proximity factor weighed in favor of suppression).

**{18}** For the final factor, "we consider the purpose and flagrancy of the police misconduct." *Id.* ¶ 23. "[M]ore severe police misconduct is required than the mere absence of proper cause for the seizure." *Id.* (internal quotation marks and citation omitted). To establish the purposeful and flagrant official misconduct, the defendant must establish that "(1) the impropriety was obvious, or the official knew his conduct was likely unconstitutional but continued nonetheless; or (2) the misconduct was investigatory in design and purpose." *Monafo*, 2016-NMCA-092, ¶ 15. We focus our inquiry on the second *Monafo* alternative.

**{19}** We first note that the officer's role under the emergency aid doctrine "is totally divorced from law enforcement's separate goal of gathering evidence and investigating crime." *Yazzie*, 2019-NMSC-008, ¶ 15 (internal quotation marks and citation omitted). Under the doctrine, "the burden to demonstrate an emergency is high." *Cordova*, 2016-NMCA-019, ¶ 14 (internal quotation marks and citation omitted). Further, "[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Ryon*, 2005-NMSC-005, ¶ 23 (internal quotation marks and citation omitted).

**{20}** Here, the emergency justifying the officer's entry into the home was resolved before he sought out Defendant. The officer stated he wanted to "speak to [Defendant]

to get his side of the story, [and] make sure he [had not] seen anybody hurting" Holland. This indicates that any communication and detention of Defendant to obtain his identification was in an investigatory capacity, completely divorced from rendering emergency aid, contrary to the conclusion reached by the district court.

{21}   In *Edwards*, we determined that the police conduct was not flagrant because the officer was investigating the report of a possible serious crime "contemporaneous to its reported occurrence." 2019-NMCA-070, ¶ 12. We differentiate the facts of this case from *Edwards* on multiple grounds. In *Edwards*, the officer's "aim was to investigate the report of a possible serious crime, a shooting," which had not been resolved. *Id.* Here, the officer was investigating a report of Holland being harmed, which he resolved before extending the scope of his investigation. Second, in *Edwards*, the officer's investigation and detention was of a defendant who was a passenger in a vehicle. *Id.* ¶¶ 3, 6. Here, Defendant was in his home, to which we provide particular protection. *See Yazzie*, 2019-NMSC-008, ¶ 17 ("When it comes to the Fourth Amendment, the home is first among equals. At the Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (alteration, internal quotation marks, and citation omitted)).

{22}   Finally, to apply the attenuation doctrine here to permit the admission of the evidence in Defendant's possession would embolden police to engage in unreasonable searches and seizures under the guise of the emergency aid doctrine, a doctrine intended to be strictly limited by the police officer's intent to render aid. *Cf. Edwards*, 2019-NMCA-070, ¶ 12 (noting that nothing in the relevant circumstances would embolden police to engage in unconstitutional investigatory detentions when weighing the third attenuation doctrine factor); *see Yazzie*, 2019-NMSC-008, ¶ 15 (explaining "[t]he emergency assistance doctrine arises from a police officer's duty as community caretaker to assist those who are seriously injured or threatened with such injury" (internal quotation marks and citation omitted)); *Cordova*, 2016-NMCA-019, ¶ 8 (explaining that the emergency aid doctrine is a "narrowly defined" exception to the warrant requirement of entering a defendant's home). Based on the investigatory purpose of the officer's detention of Defendant, *see Monafo*, 2016-NMCA-092, ¶¶ 15-16, we conclude the third attenuation factor weighs in favor of suppression.

{23}   Weighing the three factors together, we conclude that the evidence discovered on Defendant's person was inadmissible because the seizure was not sufficiently attenuated by the preexisting arrest warrant. *See Ramey*, 2020-NMCA-041, ¶ 28 (concluding that when the first and third attenuation factors weighed in favor of suppression, the evidence discovered based on the attenuating circumstance of an valid outstanding warrant for the defendant's arrest was inadmissible). As we have concluded Defendant's right is protected by the Fourth Amendment of the United States Constitution, we need not reach this argument under Article II, Section 10 of the New Mexico Constitution. *See Ketelson*, 2011-NMSC-023, ¶ 10.

**CONCLUSION**

**{24}** For the foregoing reasons, we reverse the denial of Defendant's motion to suppress and remand for further proceedings consistent with this opinion.

**{25} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KATHERINE A. WRAY, Judge**